James D. COTTON

v.

ADVANCE STEAMSHIP COMPANY

and

Overseas Navigation Corporation.

No. 53 of 1954.

United States District Court
E. D. Pennsylvania.

June 2, 1959.

Stark & Goldstein, Herman Moskowitz, Philadelphia, Pa., for libellant.

Rawle & Henderson, Harrison G. Kildare, Philadelphia, Pa., for respondent.

KRAFT, District Judge.

From the evidence in this action for maintenance and cure, the court makes the following:

Findings of Fact

1. Libellant, James D. Cotton, as an employee of both respondents, signed on as messman in the crew of the SS "William H. Wilmer" on September 9, 1953.

2. Dr. George E. Burden, on respondents' behalf, made a pre-sign-on physical examination of the libellant, and, upon the basis of his examination, reported the libellant fit for sea duty.

3. For almost a year before Dr. Burden's examination, libellant was aware of recurrent periods of testicular and abdominal pain, but did not disclose that knowledge to Dr. Burden.

4. The voyage of the SS "William H. Wilmer" began on or about September 9, 1953, at Philadelphia, Pennsylvania, and terminated November 28, 1953, at Portland, Oregon.

5. On or about October 2, 1953, the day following the vessel's departure from Los Angeles, California, for Inchon, Korea, libellant reported to the master of the "William H. Wilmer" that he was suffering from pain in the abdominal and testicular area. Libellant made no claim of accidental injury to the master, who administered aureomycin capsules.

6. Libellant returned for further treatment on October 3, 9 and 11, 1953. On one of these occasions libellant informed the master that when he had had a similar pain previously, penicillin had afforded him relief. The master caused one or more doses of penicillin to be administered.

7. Libellant's onslaught of pain did not occur, as libellant testified, when the vessel was a week or ten days from Inchon, Korea, on the date when spoiled potatoes were jettisoned and a boat drill held. The spoiled potatoes were jettisoned at sea on September 29, 1953, before the vessel's arrival at Los Angeles. No boat drill was held that day. Boat drills were held on September 28 and October 5, 1953. The vessel arrived at Inchon, Korea, October 27, 1953.

8. The testimony of the libellant that the onslaught of pain in the testicular and abdominal area occurred while he was engaged in dumping spoiled potatoes overboard at a time when the vessel was a week or ten days from Inchon, Korea, was wilfully false and not merely mistaken recollection.

9. After October 11, 1953, the libellant made no request to the ship's officers for further medical care. Although the vessel stopped for several days at Inchon, Korea and Kure, Japan, libellant made no effort to seek medical examination or treatment by any doctor ashore, though he had opportunity to do so.

10. Libellant lost no time from work and performed his duties as messman without request for relief during the voyage which terminated at Portland, Oregon, where libellant was paid off with the remainder of the crew on November 30, 1953.

11. Prior to, during and subsequent to his service as a member of the crew of the SS "William H. Wilmer", libellant suffered from the effects of an anatomical malformation, a congenital defect, consisting of high insertion of the testis on the left side. This defect resulted in occasional spontaneous twisting of the spermatic cord upon itself, an event productive of acute abdominal pain. Ordinarily, the spermatic cord untwists itself within half an hour of such occurrence and the swelling of the testicle caused by the attack and the accompanying pain abates in twenty-four to forty-eight hours, or, if the cord fails to untwist itself, the patient develops shock and other symptoms which libellant did not experience.

12. During his service as a member of the crew of the SS "William H. Wilmer", the libellant suffered from no disease or infection. The incidents of pain suffered by the libellant during the voyage, for which treatment was afforded, resulted from a congenital torsionous spermatic cord.

13. The libellant's evidence failed to persuade the court that he was afflicted with chronic orchitis during his service aboard respondents' vessel.

14. During his service as a crew member of the vessel, the libellant was not refused medical care at any time, nor was there any delay or deferment in any medical care requested by libellant.

15. When libellant signed off at Portland, Oregon, his physical condition was substantially the same as it was when he signed on at Philadelphia at the beginning of the voyage.

16. After termination of his employment by the respondents, the libellant suffered from no disability which was connected in any way with his service on the SS "William H. Wilmer".

17. Respondents' payment to libellant of fifty-six dollars for maintenance and cure for the period of seven days after his discharge from the Baltimore Marine Hospital on February 16, 1954, with a certification that he would be fit for full duty in one week, was a gratuitous payment founded on respondents' mistake of fact regarding libellant's prior medical history and the nature of his complaint.

18. During libellant's confinement at Baltimore Marine Hospital from January 12, 1954, to February 16, 1954, he was treated for infectious hepatitis which was unconnected with his service aboard the respondents' vessel.

19. On February 16, 1954, libellant was discharged from Baltimore Marine Hospital with a certification that he would be fit for full duty in one week. Libellant was fit for full duty on February 23, 1954.

20. Libellant did not resume maritime employment immediately after his discharge from Baltimore Marine Hospital, but took employment as a dish washer in March 1954 for approximately a month.

21. On July 20, 1954, libellant joined the crew of the SS "Gulfstream" as a messman. He remained in that post for three consecutive voyages until the end of December, 1954, when he experienced another episode of abdominal and testicular pain similar to that experienced on October 2, 1953 aboard the SS "William H. Wilmer". Libellant left the SS "Gulfstream" at that time and was admitted to Baltimore Marine Hospital from January 5 to January 12, 1955.

22. While under observation at Baltimore Marine Hospital in January, 1955, libellant was advised by the doctor to submit to an exploratory operation to determine whether he suffered from testicular neoplasm, but libellant refused to undergo such an operation because the surgeon could not guarantee a positive cure.

23. Libellant rejoined the SS "Gulfstream" on January 31, 1955, and thereafter until the present time has been working steadily as a seaman on various

ships. He has seen no doctor and has had no medical care for his condition since January, 1955, because the condition has given him no trouble.

24. The parties have stipulated that any maintenance and cure due libellant should be evaluated at eight dollars daily.

### Discussion

Libellant's counsel has strenuously insisted that libellant suffered chronic orchitis while serving aboard respondents' vessel. We have found to the contrary. The records of the United States Public Health Service Hospital at Baltimore, covering libellant's confinement from January 12 to February 16, are one of the bases of libellant's contention. However, the record offered (Libellant's Exhibit 1) under "Narrative Summary" states the diagnosis as follows:

Chronic orchitis, left

Urinary tract tuberculosis, suspected.

It is impossible to determine from examination of the documents whether the diagnosis was chronic orchitis, left and suspected urinary tract tuberculosis, or whether the diagnosis was suspected chronic orchitis, left and suspected urinary tract tuberculosis. In any event, no evidence was offered by libellant to explain this uncertainty, nor was evidence offered to show the identity of the doctor making the diagnosis, nor to show the professional education, training and experience of such doctor, nor the basis upon which the diagnosis was made. In the last paragraph of the same page of this document appears the following: "On admission, the patient Was Thought to Have acute orchitis on the left" (emphasis supplied). The latter language is more clearly indicative of suspected chronic orchitis than of positive diagnosis.

The record of the libellant's confinement to the same hospital from January 5 to January 12, 1955 (Libellant's Exhibit 23), upon which libellant also relies, confirms the view that no positive diagnosis was made, since the diagnosis thereon appears as "chronic orchitis, suspected". Not only does the libellant's documentary evidence fail to persuade us that an actual diagnosis of chronic orchitis was made, but the testimony of Dr. Carp, a competent urologist, persuades us that that diagnosis, even if made, was mistaken.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. Libellant sustained intermittent, temporary disability in the service of respondents' vessel on October 2, 3, 9 and October 11, 1953, which did not persist after libellant's separation from the vessel on November 30, 1953.

3. Libellant has failed to sustain his burden of proving that he is entitled to the maintenance and cure prayed for.

4. A decree may be submitted for judgment in favor of the respondents and against the libellant, without costs to either party.